UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| United States of America, | Case No.: 2:18-cr-00069-JAD-NJK-2 |
|---|---|
| Plaintiff | |
| v. | **Order Denying Emergency Motion for Compassionate Release and Granting Motion to Seal Medical Records** |
| Steven G. McPeak, | |
| Defendant | |
| | [ECF Nos. 70, 75] |

Defendant Steven Guy McPeak is nearly halfway into his five-year sentence for conspiracy to distribute methamphetamine. He asks this court to grant him compassionate release or a reduction of his sentence because he is almost 75 years old, suffers from Hepatitis B and hyperinflated lungs, and was recently discovered to have blood in his stool—all of which he argues puts him at a higher risk for contracting SARS-CoV-2, the virus that causes COVID-19.[1] I deny the motion because McPeak hasn't shown that such relief is warranted.

**Background**

In June 2019, McPeak pleaded guilty to conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(c).[2] In his plea agreement, McPeak admitted that he provided his co-defendant with approximately two ounces of methamphetamine to complete a six-ounce sale to an undercover officer.[3] After his co-defendant completed the 173.9-gram sale and was taken into custody, the officers found McPeak in his van nearby.[4] The officers arrested

---

[1] ECF Nos. 70 (motion), 76 (reply), 78 (second supplement).
[2] ECF No. 35 at 2 (plea agreement).
[3] *Id*. at 4.
[4] *Id*.

McPeak, searched the van, and found an additional 16 grams of methamphetamine and suspected MDMA pills.[5] McPeak admitted to giving his co-defendant the extra methamphetamine for the sale after he was read his *Miranda* rights.[6] He was sentenced to five years in custody followed by three years of supervision for the offense[7] and is currently serving his sentence at the Herlong Federal Correctional Institute (FCI). The Bureau of Prisons' (BOP) website reflects June 6, 2022, as his release date.[8]

In a counseled motion and two supplemental filings, 74-year-old McPeak asks the court to grant him a compassionate release or a modification in his sentence.[9] He claims that he isn't safe at Herlong FCI because the inmates are subject to 23-hour lockdowns and that he needs a walker to ambulate after having fallen down some stairs. He adds that his age and diagnoses of Hepatitis B, hyperinflated lungs, and blood in his stool are compelling circumstances that warrant his release because they put him at a higher risk of contracting SARS-CoV-2.[10] McPeak argues that he poses minimal risk to the community because he is unlikely to be a violent offender at his age and he believes that the factors listed under 18 US.C. § 3553(a) support his release.[11] He asks to be temporarily released to the home of a family friend who lives in downtown Las Vegas while he obtains a permanent residence and can collect his pension

---

[5] *Id*.

[6] *Id*.

[7] ECF Nos. 67, 68.

[8] *Find an Inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited August 6, 2020).

[9] ECF No. 70.

[10] *See* reply and second supplement to the motion at ECF Nos. 76, 78.

[11] ECF No. 70.

benefits as a retired ironworker.[12] The government opposes his motion, arguing that McPeak has neither administratively exhausted his request[13] nor identified extraordinary and compelling reasons warranting release; he was arrested at 72 with a rich history of substance dependency and drug crimes, and therefore remains a danger to the community.[14]

## Discussion

A sentencing court's ability to modify or reduce a sentence once imposed is seriously limited.[15] The compassionate-release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018,[16] is an exception to this limitation. It allows the sentencing judge to reduce a sentence based on "extraordinary and compelling reasons" after the defendant has failed to get the BOP to bring such a motion on his behalf.[17] The court must consider the factors in 18 U.S.C. § 3553(a) "to the extent that they are applicable," and any sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission."[18] The court may entertain an inmate's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) only (1) "after [he] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion" on his behalf or (2) after "the lapse of 30 days

---

[12] *Id*. at 15–16; ECF No. 77 at 1–2.

[13] ECF No. 73 at 6.

[14] *Id*. at 18.

[15] *See United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003) (exploring Federal Rules of Criminal Procedure 35 and 36); 18 U.S.C. § 3582(c).

[16] The First Step Act of 2018, § 603(b), Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018).

[17] 18 U.S.C. § 3582(c)(1)(A)(i).

[18] *Id*.

3

from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."[19]

### A.    Exhaustion of the BOP's compassionate-release request process

The parties dispute whether McPeak exhausted the administrative process before filing this motion for compassionate release.[20] In his first supplemental filing, McPeak attached the warden's denial of his May 13, 2020, request.[21] But that denial was based on a different reason for relief—only his age—than the ones McPeak asserts here. Explaining that "[McPeak is] a 74-year-old male with no underlying medical conditions that would indicate an increased risk[,]" the warden determined that McPeak "d[oes] not meet the criteria for [c]ompassionate [r]elease."[22] Because the warden didn't consider McPeak's diagnoses for Hepatitis B, hyperinflated lungs, and blood-in-the-stool diagnoses in denying his request, it's not clear that McPeak exhausted the administrative process for the request he now makes.

### B.    Extraordinary and compelling reasons for a sentence reduction

But assuming without deciding that McPeak did exhaust the administrative process, I deny his compassionate-release request on its merits because he has not shown that a sentence reduction is warranted. The COVID-19 pandemic is undeniably grave and its impacts on every aspect of American life are unprecedented. But the BOP has implemented a detailed COVID-19 response plan for federal inmates, and the low number of reported cases at Herlong FCI suggests

---

[19] *Id*.

[20] *Compare* ECF No. 70 at 7 (providing that Herlong FCI's warden denied his request on June 10, 2020—over one month before McPeak filed this motion), *with* ECF No. 73 (arguing that McPeak did not "provide any information or documentation substantiating that he actually submitted the request, or that the request stated the same grounds for compassionate release" asserted in the motion).

[21] ECF No. 77-1.

[22] *Id*.

4

that the plan is effective there.[23] The BOP's website reflects that just two inmates and zero staff members at Herlong FCI are currently COVID-19 positive.[24]

Individuals like McPeak who are in their "70s are, in general, at [a] higher risk for severe illness"[25] from the virus, and the risk for contracting it increases if the individual has underlying medical conditions like obesity, cancer, and chronic obstructive pulmonary disease (COPD).[26] Though respiratory issues like hyperinflated lungs may be a symptom of COPD, McPeak doesn't argue that he has a COPD diagnosis. Indeed, his diagnosis is for "[r]espiratory disorder, unspecified."[27] He also doesn't argue that his fecal-blood diagnosis falls under the Centers for Disease Control and Prevention's (CDC) definite-risk categories, and his Hepatitis B diagnosis also falls outside that list.[28] The CDC only recognizes conditions that a person currently has, not conditions that a person is at risk of developing, as increasing the risk of severe illness from

---

[23] *BOP Implementing Modified Operations,* FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Aug. 17, 2020).

[24] *See COVID-19: Coronavirus,* FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Aug. 19, 2020).

[25] The Centers for Disease Control and Prevention website reports that in the United States approximately 80% of COVID-19 related deaths have been among adults aged 65 years or older. *See Older Adults and COVID-19*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Aug. 17, 2020).

[26] *People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Aug. 17, 2020) (listing underlying conditions that put "[p]eople of any age…**at increased risk** of severe illness from COVID-19" and listing cancer, chronic kidney disease, COPD, immunocompromised state, obesity, serious heart conditions, sickle cell disease, and Type 2 diabetes mellitus as definite risk diagnoses) (emphasis in the original).

[27] ECF No. 79 (sealed medical records).

[28] *See People with Certain Medical Conditions*, *supra* (providing that individuals with liver disease "**might be at an increased risk** for severe illness from COVID-19") (emphasis in the original).

5

COVID-19.[29] So while a later diagnosis confirming cancer, COPD, or another qualifying disease might establish McPeak's high-risk classification, the concerns McPeak has identified fall short of the extraordinary and compelling concerns needed to justify compassionate release.

**C.     Consideration of the applicable § 3553(a) factors**

Even if McPeak's conditions during this pandemic qualified as extraordinary and compelling reasons to essentially cut his sentence in half, I would still deny his motion because the applicable § 3553(a) factors do not justify a sentence reduction for him. McPeak has a lengthy criminal history (a score of 10 and category of V), and most of his offenses involve drugs. For this offense, McPeak drove to the drug sale, personally possessed methamphetamine, and carried a large amount of cash that he admitted was drug money. I am not persuaded that he presents a low risk to the community because of his age. He was 72 when he was charged in this case, and neither his age nor his significant past incarcerations have yet deterred his criminal behavior.

And while I do not overlook the positive information for McPeak on the other end of the § 3553(a) scale—which includes him being a retired ironworker with a pension and the fact that he has secured temporary housing—these facts do not outweigh the factors that justified a five-year sentence just ten months ago. During sentencing, I carefully evaluated the § 3553(a) factors to reach a sentence that I found was sufficient but not greater than necessary to accomplish the goals and objectives of sentencing. I considered that much of McPeak's criminal history was related to his struggle with addiction and that he hadn't had an opportunity for treatment. I also took into account his lesser role in the drug sale compared to his codefendant. I concluded that these factors justified a ten-month downward variance from the sentencing guidelines. I also

---

[29] *See id.* (comparing definite-risk and potential-risk categories).

made a record of my concern that McPeak's sentence must present a true deterrent from future crimes involving drugs—particularly because of McPeak's criminal history and past incarceration periods.  Nothing that McPeak offers in his instant filings allays those real and abiding concerns.

Having carefully evaluated the applicable § 3553(a) factors anew in light of McPeak's motion and as 18 U.S.C. § 3582(c)(1)(A) requires, I maintain that the below-guideline sentence that he received was and remains sufficient and not greater than necessary despite the pandemic and McPeak's physical conditions.  It still reflects the seriousness of his offense, promotes respect for the law, provide just punishment, affords adequate deterrence to criminal conduct, and remains necessary to protects the public from further crimes by this defendant.[30]  A further reduction would prevent the sentence imposed from having the deterrent effect that I intended, ignore McPeak's lengthy criminal history and characteristics, and effect an unwarranted sentencing disparity when compared to his co-defendant.  I therefore find that McPeak is not entitled to a sentence reduction or compassionate release.

## Conclusion

IT IS THEREFORE ORDERED that Defendant Steven McPeak's Motion for Compassionate Release or Reduction of Sentence under 18 U.S.C. § 3582(c)(1)(A)(i) **[ECF No. 70] is DENIED.**

. . .

---

[30] 18 U.S.C. § 3553(a)(6).

IT IS FURTHER ORDERED that the Government's unopposed motion to file McPeak's medical records under seal **[ECF No. 75] is GRANTED.** The Clerk of Court is directed to maintain the seal on ECF No. 74.

Dated: August 19, 2020

_____
U.S. District Judge Jennifer A. Dorsey